# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID J. BLACK | : CIVIL ACTION |
| v. | : |
| | : NO. 16-219 |
| RICHARD WORKMAN, ROBERT JONES, JOSEPH TREMPUS AND FRANK J. KAMALICH | : |

## MEMORANDUM

**KEARNEY, J.**                                                                 **November 22, 2016**

The Supreme Court has long mandated corrections officers, like all public employees, cannot claim their public employers' disciplinary and termination processes against them violate procedural due process under a "class of one" theory. This principle rests upon the difference in public employers' necessary management of employees compared to interaction with the public. A corrections officer allegedly set up by inmates' statements against him resulting in a criminal resolution and temporary suspension cannot later argue his public employer supervisors deprived him of equal protection or due process as a class of one by investigating and reporting him to the police authorities. Had he received a favorable termination of his criminal charges, the corrections officer may have another claim under civil rights laws, but he cannot argue an investigation and report to appropriate authorities as required by the Department of Corrections' internal Policies falls outside his public employment context. We grant the Defendants' Motion for judgment on the pleadings in the accompanying Order.

### I. Alleged facts.

Sargent David J. Black works as a corrections officer at State Correctional Institute-Fayette ("SCI-Fayette").[1] SCI-Fayette "maintains a policy that permits inmates to move freely

throughout the cellblock during designated 'day room' hours to engage in specific activities, such as making phone calls and playing cards."[2] "It is SCI-Fayette's common practice to permit inmates to visit other cells where they are given food from other inmates."[3] Sargent Black and the Defendant supervisors and investigators are governed by Department of Corrections Policies. The Department of Corrections Policy No. DC ADM 004 is "applicable to all employees . . . to ensure that all criminal acts committed by or to inmates are processed, investigated, referred to the appropriate law enforcement authority and disposed of, by prosecution and/or administrative action."[4]

### A. The inmates' fight leading to investigation and criminal report.

On October 20, 2013, during his regular 2:00 pm to 10:00 pm shift, Sargent Black worked in the control booth of the "F Block" of cells.[5] Sargent Black did not work the previous two days.[6] At about 7:30 P.M., Inmate Alexander Fulton asked Sargent Black to open cell FB1008 so Inmate Fulton "could obtain food from the inmate occupying the cell."[7] Unknown to Sargent Black, cell FB1008 was then unoccupied.[8]

When Inmate Fulton made the request, Sargent Black believed an inmate occupant of cell FB1008 invited Inmate Fulton to the cell to share food.[9] Due to the common practice at SCI-Fayette, Sargent Black unlocked both Inmate Fulton's cell "so that he could retrieve a bowl for the food" and cell FB1008.[10] When Sargent Black opened the cell doors, Inmate Brandon Duncan "entered the unoccupied cell at the urging of Inmate Fulton."[11] The two inmates "then engaged in a physical altercation," resulting in injuries to Inmate Duncan.[12]

Minutes after opening the cells, corrections officer Robert Moran told Sargent Black cell FB1008 was unoccupied.[13] Sargent Black "immediately left the control room to investigate Inmate Fulton's whereabouts."[14] "Immediately after the confrontation between the inmates

2

began," Sargent Black and another corrections officer, Todd Cercone, went to cell FB1008 and stopped the fight.[15] Sargent Black then "immediately notified [d]efendant [Major Richard] Workman," the shift commander on duty.[16] Sargent Black also completed the mandatory incident reports.[17]

### B. Investigations of Sargent Black.

On October 22, 2013, Inmate Duncan filed a written complaint claiming Sargent Black opened cell FB1008 "for the express purpose of allowing the inmates to fight in it" under a prearranged agreement between Sargent Black and Inmate Fulton.[18] Sargent Black alleges Joseph Trempus, the F Block security captain, pressured Inmate Duncan to file the complaint. Sargent Black alleges it is a "false and misleading complaint."[19] After Inmate Duncan filed his complaint, Sargent Black alleges Mr. Trempus began investigating Sargent Black's conduct by contacting the Pennsylvania Department of Corrections' ("DOC") Office of Special Investigations and Intelligence ("OSII").[20]

OSII investigator Frank J. Kamalich then interviewed Inmate Fulton, who stated Sargent Black did not know or suspect he planned to fight Inmate Duncan in cell FB1008.[21] Investigator Kamalich also interviewed the October 20th shift commander, Mr. Workman, who stated Sargent Black tried to cover up the fight in cell FB1008.[22]

While Investigator Kamalich conducted his investigation, Defendant Lieutenant Robert Jones conducted a "separate and unrelated investigation" into Sargent Black's relationship with Inmate Riccheem Barker.[23] Sargent Black alleges Lieutenant Jones "attempted to pressure Inmate Barker into making a false claim …[Sargent Black] brought illegal drugs onto SCI-Fayette premises in exchange for metal key chits (fobs) … Inmate Barker made in the prison shop."[24] "Despite [Mr.] Jones' coercive behavior, Inmate Barker refused to make a false

3

complaint against [Sargent Black]."[25] Sargent Black alleges Defendants conspired to, and did, punish Inmate Barker for his honesty by housing him in the facility's restricted housing unit.[26]

Investigator Kamalich found Sargent Black violated several Department of Corrections ethical regulations for neither promptly nor accurately reporting the cell FB1008 fight, for not reporting the injuries sustained by Inmate Duncan, and for not being truthful in the investigation.[27] Investigator Kamalich found Sargent Black violated rules mandating all cell doors remain locked and Sargent Black subjected Inmate Duncan to personal abuse and/or injury by unlocking cell FB1008 for the inmates to fight inside.[28]

### C. Discipline, union investigation, and criminal charges.

Allegedly based on Investigator Kamalich's findings, the Commonwealth charged Sargent Black with recklessly endangering another person.[29] Sargent Black complains discipline or formal criminal charges against a corrections officer is not customary practice at SCI-Fayette when the corrections officer merely witnessed a fight.[30] Sargent Black alleges "he is the only corrections officer in the history of the Pennsylvania Department of Corrections to be charged with recklessly endangering another person as the result of an altercation between inmates."[31]

On March 7, 2014, the Commonwealth terminated him for alleged ethical violations.[32] Sargent Black invoked his union's grievance procedure.[33] The union investigated Sargent Black's termination, interviewing several inmates.[34] Inmate Fulton testified Sargent Black did not know he was opening cell FB1008 to allow Inmates Fulton and Duncan to fight.[35] Inmate Duncan told the union he did not allege Sargent Black knew of either inmate's intent to fight in cell FB1008.[36] Sargent Black asserts the Defendants rewarded Inmate Duncan for his allegations against Sargent Black and punished Inmate Fulton by housing him in the special unit for refusing to make allegations against Sargent Black.[37] In his interview with the union, Inmate Barker "reaffirmed . . . he was pressured to falsely accuse" Sargent Black of bringing drugs into the

4

prison.[38]

The state court dismissed the criminal case against Sargent Black after a grant of his writ of *habeas corpus*.[39] As a result of the union grievance process, SCI-Fayette reinstated Sargent Black at the prison.[40] The Pennsylvania Superior Court then overturned the dismissal of Sargent Black's criminal case.[41] Due to the renewed criminal case against Sargent Black, SCI-Fayette suspended Sargent Black under prison policy on January 20, 2015.[42] After a three-month suspension and completion of an Accelerated Rehabilitative Disposition program, SCI-Fayette reinstated Sargent Black on April 20, 2015.[43]

Sargent Black sued Defendants for violating his right to procedural due process and conspiracy arising from the report to the police and eventual criminal resolution.[44]

## II. Analysis.

Defendants move for judgment on the pleadings arguing Sargent Black's class-of-one equal protection or procedural due process theory is not applicable in the public employment context.[45] Following Supreme Court guidance, we agree and grant Defendants' Motion.

### A. Sargent Black cannot state a procedural due process claim.

Sargent Black claims Defendants violated his procedural due process or deprived him of equal protection under the class-of-one theory.[46] "[T]o state a claim, a plaintiff must allege (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment."[47] As the Supreme Court instructs in *Engquist v. Oregon Department of Agriculture*, the class-of-one theory does not apply in the public employment context.[48]

"[T]he class-of-one theory of equal protection—which presupposes that like individuals should be treated alike, and that to treat them differently is to classify them in a way that must survive at least rationality review—is simply a poor fit in the public employment context. To

5

treat employees differently is not to classify them in a way that raises equal protection concerns. Rather, it is simply to exercise the broad discretion that typically characterizes the employer-employee relationship."[49] This rationale is based "largely on the discretion the government possesses as an employer, noting that the 'government has significantly greater leeway in its dealings with citizen employees than it does when it brings its sovereign power to bear on citizens at large.'"[50]

Sargent Black argues Defendants took his case outside the public employment context when they provided information gathered by internal investigations to law enforcement not under their employ. We need not address whether a public employer steps outside the employment relationship by referring criminal conduct by an employee during work hours to law enforcement. Here, the employment relationship is governed by Department of Corrections Policies. Those Policies define the roles and rights of employee corrections officers. The Department of Corrections Policy No. DC ADM 004, "applicable to all employees . . . to ensure that all criminal acts committed by or to inmates are processed, investigated, *referred to the appropriate law enforcement authority* and disposed of, by prosecution and/or administrative action."[51]

Because Sargent Black's criminal matter involved a crime against an inmate, it falls under DOC Policy No. DC ADM 004. As the matter fell under standard employment policy, the investigation and report to the appropriate law enforcement authority is within the context of Sargent Black's public employment. Under *Engquist*, class-of-one theories are barred in the public employment context. We dismiss Sargent Black's procedural due process claim based on the class-of-one theory.

6

### B. Absent a due process claim, Sargent Black cannot state a conspiracy claim.

As Defendants cannot deprive a public employee's equal protection rights based on a class-of-one theory, they cannot be legally found to have conspired.[52] We dismiss Sargent Black's conspiracy claim.

### III. Conclusion.

In the accompanying Order, we grant Defendants' Motion for judgment on the pleadings and dismiss Sargent Black's §1983 equal protection and conspiracy claims.

---

[1] ECF Doc. No. 24 ¶ 5.

[2] *Id.* at ¶ 14.

[3] *Id.* at ¶ 17.

[4] "Criminal Violations," Commonwealth of Pennsylvania, Department of Corrections, Policy No. DC ADM 004 (emphasis added).

[5] *Id.* at ¶¶ 12-13, 15.

[6] *Id.* at ¶ 13.

[7] *Id.* at ¶¶ 15-16.

[8] *Id.* at ¶ 19.

[9] *Id.* at ¶ 17.

[10] *Id.*

[11] *Id.* at ¶ 21.

[12] *Id.*

[13] *Id.* at ¶ 20.

[14] *Id.*

---

[15] *Id.* at ¶ 22.

[16] *Id.* at ¶ 23.

[17] *Id.*

[18] *Id.* at ¶ 29.

[19] *Id.* at ¶ 31.

[20] *Id.* at ¶ 32.

[21] *Id.* at ¶ 35.

[22] *Id.* at ¶¶ 23, 36.

[23] *Id.* at ¶ 37.

[24] *Id.*

[25] *Id.* at ¶ 38.

[26] *Id.* at ¶ 39.

[27] *Id.* at ¶ 40.

[28] *Id.*

[29] *Id.* at ¶ 42.

[30] *Id.* at ¶ 43.

[31] *Id.* at ¶ 44.

[32] *Id.* at ¶ 45.

[33] *Id.* at ¶ 46.

[34] *Id.* at ¶ 47.

[35] *Id.* at ¶ 48.

[36] *Id.* at ¶ 49.

[37] *Id.* at ¶ 52.

³⁸ *Id.* at ¶ 53.

³⁹ *Id.* at ¶ 54.

⁴⁰ *Id.* at ¶ 55.

⁴¹ *Id.* at ¶ 56.

⁴² *Id.* at ¶ 57.

⁴³ *Id.*

⁴⁴ Sargent Black's allegations relate closely to a possible cause of action for selective enforcement. *See Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005). Sargent Black might have brought a selective enforcement claim, which implies invalidity of the underlying enforcement, had he received a favorable ruling in his criminal case. *Deemer v. Beard*, 557 F.App'x 162, 164-165 (3d Cir. 2014) (explaining *Heck v. Humphrey*, 512 U.S. 477 (1994) as requiring a favorable termination to bring a § 1983 claim against the validity of a conviction or sentence).

⁴⁵ A court's review of a Rule 12(c) motion to dismiss, similar to review of a motion to dismiss under Rule 12(b)(6), must construe the facts alleged in the pleadings, and the inferences to be drawn from them, in the light most favorable to the nonmoving party. *See Leamer v. Fauver*, 288 F.3d 532, 535 (3d Cir. 2002). "[J]udgment should not [] be[] granted unless the moving party has established that there is no material issue of fact to resolve, and that it is entitled to judgment in its favor as a matter of law." *Id.* at 535 (citing *Jablonski v. Pan American World Airways, Inc.*, 863 F.2d 289, 290–91 (3d Cir. 1988)).

"[W]here, as here, a motion for judgment on the pleadings asserts that plaintiff fails to state a claim on which relief can be granted, the court considers the motion under the same standard as a Rule 12(b)(6) motion even where no motion to dismiss under Rule 12(b)(6) has been made." *Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010). "Federal Rule of Civil Procedure 12(h)(2) provides that a defense of failure to state a claim upon which relief can be granted may be made by a motion for judgment on the pleadings." *Id.* at n.8 (citing Fed. R. Civ. P. 12(h)(2)). "A Rule 12(b)(6) motion requires the court to examine the sufficiency of the complaint." *Atiyeh*, 742 F. Supp. 2d at 595 (citing *Conley v. Gibson*, 355 U.S. 41, 45 (1957) (abrogated in other respects by *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007))). "Except as provided in Federal Rule of Civil Procedure 9, a complaint is sufficient if it complies with Rule 8(a)(2), which requires 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Atiyeh*, 742 F. Supp. 2d at 596. Rule 8(a)(2) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

"A court considering a motion to dismiss can choose to begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth." *Id.* at 679. "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

[46] ECF Doc. No. 36, p. 5 ("[] Plaintiff has set forth an equal protection claim based on a "class of one" theory, not selective enforcement as the Defendants attempt to convey.").

[47] *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006).

[48] 553 U.S. 591, 605 (2008).

[49] *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 605 (2008).

[50] *Thomas v. Coopersmith*, 2012 WL 3599415 at *4 (E.D. Pa. Aug. 21, 2012) (quoting *Engquist*, 553 U.S. at 599).

[51] "Criminal Violations," Commonwealth of Pennsylvania, Department of Corrections, Policy No. DC ADM 004 (emphasis added).

[52] *See Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 405 (3d Cir. 2000).